IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDWARDO LEDESMA,

    Petitioner,                   No. CIV 11-cv-0085-JFM (HC)

   vs.

GARY SWARTHOUT, *Warden*,      ORDER AND

    Respondent.              FINDINGS & RECOMMENDATIONS

_____/

        Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, together with a request to proceed in forma pauperis.

        Examination of the affidavit reveals petitioner is unable to afford the costs of this action. Accordingly, leave to proceed in forma pauperis is granted. 28 U.S.C. § 1915(a).

        Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court ...." Rule 4 of the Rules Governing Section 2254 Cases. The court must summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court...." Habeas Rule 4; O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990); see

1

also <u>Hendricks v. Vasquez</u>, 908 F.2d 490 (9th Cir. 1990).  Habeas Rule 2(c) requires that a petition (1) specify all grounds of relief available to the Petitioner; (2) state the facts supporting each ground; and (3) state the relief requested. Notice pleading is not sufficient; rather, the petition must state facts that point to a real possibility of constitutional error.  Rule 4, Advisory Committee Notes, 1976 Adoption; <u>O'Bremski</u>, 915 F.2d at 420.  Allegations in a petition that are vague, conclusory, or palpably incredible are subject to summary dismissal.  <u>Hendricks</u>, 908 F.2d at 491.

Further, the Advisory Committee Notes to Rule 8 indicate that the court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed. Advisory Committee Notes to Habeas Rule 8, 1976 Adoption; <u>see</u> <u>Herbst v. Cook</u>, 260 F.3d 1039 (9th Cir. 2001).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different result.  <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000)).

/////

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted). See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are

/////

made, and thereby gives rise to a constitutional liberty interest." Greenholtz, 442 U.S. at 12. See also Allen, 482 U.S. at 376-78.

California's parole statutes give rise to a liberty interest in parole protected by the federal due process clause. Swarthout v. Cooke, 562 U.S. ___ (2011), No. 10-333, 2011 WL 197627, at *2 (Jan. 24, 2011). In California, a prisoner is entitled to release on parole unless there is "some evidence" of his or her current dangerousness. In re Lawrence, 44 Cal.4th 1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002). However, in Swarthout the United States Supreme Court held that "[n]o opinion of [theirs] supports converting California's 'some evidence' rule into a substantive federal requirement." Swarthout, 2011 WL 197627, at *3. Rather, the protection afforded by the federal due process clause to California parole decisions consists solely of the "minimal" procedural requirements set forth in Greenholtz, specifically "an opportunity to be heard and . . . a statement of the reasons why parole was denied." Id. at *2-3.

In the petition pending before this court, it is evident that on November 3, 2009, petitioner appeared at and participated in a parole consideration hearing before the Board of Parole Hearings ("the Board"). See Doc. No. 1 at 33. Following deliberations held at the conclusion of the hearing, the Board announced their decision to deny petitioner parole and the reasons for that decision. Id. at 91-97.

Petitioner seeks relief on two grounds. First, petitioner seeks relief on the ground that California's "Proposition 9" violates the ex post facto clause of the federal constitution. Proposition 9, also known as the "Victims' Bill of Rights Act of 2008: Marsy's Law," effected an amendment of Cal. Pen. Code § 3041.5(b)(3) on November 4, 2008 that resulted in a lengthening of the period between parole suitability hearings.

/////

/////

/////

Under the statute as it existed prior to the enactment of "Marsy's Law," indeterminately-sentenced inmates, such as petitioner[1], were denied parole for one year unless the Board found, with stated reasons, that it was unreasonable to expect that parole could be granted the following year, in which case the subsequent hearing could be extended up to five years. Cal. Penal Code § 3041.5(b)(2) (2008). However, at his 2009 parole hearing, petitioner was subject to the terms of the amended statute, which authorizes denial of a subsequent parole hearing for a period of up to fifteen years. Cal. Pen. Code, § 3041.5(b)(3) (2010). The Board applied Marsy's Law to petitioner, ordering that the next parole hearing date be held in five years. Petitioner contends this extension violates the Ex Post Facto Clause because it effectively forces petitioner to serve a sentence nine years beyond the base suggested term for his crime of 21 years. See Cal. Code of Regs., tit. 15, § 2403(c).

The Constitution provides, "No State shall ... pass any ... ex post facto Law." U.S. Const. art I, § 10. The Ex Post Facto Clause prohibits any law which: 1) makes an act done before the passing of the law, which was innocent when done, criminal; 2) aggravates a crime and makes it greater than it was when it was committed; 3) changes the punishment and inflicts a greater punishment for the crime than when it was committed; or 4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed. Carmell v. Texas, 529 U.S. 513, 522 (2000). Application of a state regulation retroactively to a defendant violates the Ex Post Facto Clause if the new regulations create a "sufficient risk" of increasing the punishment for the defendant's crimes. Himes v. Thompson, 336 F.3d 848, 854 (9th Cir. 2003) (citing Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995)). When the rule or statute does not by its own terms show a significant risk, the petitioner must demonstrate, by evidence drawn from the rule's practical

---

[1] Petitioner was sentenced to 16 years to life on his underlying conviction of second-degree murder in 1986. At the time of the parole hearing, petitioner had already served approximately 23 years.

5

implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule. Garner v. Jones, 529 U.S. 244, 250, 255 (2000).

California Penal Code section 3041.5 has been amended several times since the date of petitioner's conviction to allow for longer periods of time between parole suitability hearings. Ex Post Facto challenges to those amendments have all been rejected. See Morales, 514 U.S. at 509 (1981 amendment to Cal. Penal Code § 3041.5, which increased maximum deferral period of parole suitability hearings to five years did not violate the Ex Post Facto Clause because it simply altered the method of setting a parole release date and did not create a meaningful "risk of increasing the measure of punishment attached to the covered crimes"); Watson v. Estelle, 886 F.2d 1093, 1097-98 (9th Cir. 1989) (not a violation of the Ex Post Facto Clause to apply § 3041.5(b)(2)(A) to prisoners sentenced to life imprisonment prior to the implementation of California's Determinate Sentence Law in 1977); Clifton v. Attorney General Of the State of California, 997 F.2d 660, 662 n.1 (9th Cir. 1993) (same). See also Garner, 529 U.S. at 249 (upholding Georgia's change in the frequency of parole hearings for prisoners serving life sentences, from three to eight years, in an action brought pursuant to 42 U.S.C. § 1983); Wilkinson v. Dotson, 544 U.S. 74 (2005) (holding that inmates are not required to bring their challenges to the constitutionality of state parole procedures in habeas petitions exclusively, but may pursue their claims in § 1983 actions).

Recently, the Ninth Circuit overturned a district court decision granting preliminary injunctive relief to plaintiffs in a class action seeking to prevent the Board from enforcing the amended deferral periods established by Marsy's Law. Gilman v. Schwarzenegger, ––– F.3d ––––, No. 10–15471, 2011 WL 198435 (9th Cir. Jan. 24, 2011). The court found it unlikely that plaintiffs would succeed on the merits of their underlying challenge premised on the Ex Post Facto Clause. The court initially compared and contrasted Marsy's Law with existing Supreme Court precedent:

6

> Here, as in <u>Morales</u> and <u>Garner</u>, Proposition 9 did not increase the statutory punishment for any particular offense, did not change the date of inmates' initial parole hearings, and did not change the standard by which the Board determined whether inmates were suitable for parole.  However, the changes to the frequency of parole hearings here are more extensive than the change in either <u>Morales</u> or <u>Garner</u>.  First, Proposition 9 increased the maximum deferral period from five years to fifteen years. This change is similar to the change in <u>Morales</u> (i.e., tripled from one year to three years) and the change in <u>Garner</u> (i.e., from three years to eight years). Second, Proposition 9 increased the minimum deferral period from one year to three years. Third, Proposition 9 changed the default deferral period from one year to fifteen years.  Fourth, Proposition 9 altered the burden to impose a deferral period other than the default period .... Neither <u>Morales</u> nor <u>Garner</u> involved a change to the minimum deferral period, the default deferral period, or the burden to impose a deferral period other than the default period.

2011 WL 198435, at *5.  However, the Ninth Circuit found these distinctions non-dispositive due to the availability of advance parole hearings at the Board's discretion, reasoning that, "as in <u>Morales,</u> an advance hearing by the Board 'would remove any possibility of harm' to prisoners because they would not be required to wait a minimum of three years for a hearing." <u>Id.</u> at *6 (quoting <u>Morales</u>, 514 U.S. at 513).  The Ninth Circuit concluded that plaintiffs had failed to demonstrate a significant risk that their incarceration would be prolonged by application of Marsy's Law, and thus found that plaintiffs had not established a likelihood of success on the merits of their ex post facto claim.

Here, the Board's application of the guidelines did not increase petitioner's sentence: petitioner's sentence of sixteen years to life carries no guaranteed parole date but rather carries with it the potential that he could serve the entire term.  Furthermore, the California parole board is still vested with broad discretion in selecting a date of rehearing from three years to fifteen years.  The Board retains the discretion to advance a hearing at any time should there be a change in circumstances.  The Board

> may in its discretion, after considering the views and interests of the victim, advance a hearing set pursuant to paragraph (3) to an earlier date, when a change in circumstances or new information establishes a reasonable likelihood that consideration of the public and victim's safety does not require the additional period of incarceration of the prisoner provided in paragraph (3).

1  Cal. Penal Code § 3041.5(b)(4). Proposition 9 does not create more than a " 'speculative and
2  attenuated possibility of producing the prohibited effect of increasing the measure of punishment
3  for covered crimes.' " Garner, 529 U.S. at 251 (quoting Morales, 514 U.S. at 509).
4  Accordingly, petitioner's ex post facto claim fails as a matter of law. Thus, the undersigned
5  recommends denying leave to amend as to this claim.

6  Petitioner also seeks relief on the ground that there did not exist 'some evidence'
7  to deny parole. This argument is foreclosed by Swarthout.

8  Unless a circuit justice or judge issues a certificate of appealability, an appeal
9  may not be taken to the Court of Appeals from the final order in a habeas proceeding in which
10 the detention complained of arises out of process issued by a state court. 28 U.S.C. §
11 2253(c)(1)(A); Miller–El v. Cockrell, 537 U.S. 322, 336 (2003). A certificate of appealability
12 may issue only if the applicant makes a substantial showing of the denial of a constitutional
13 right. § 2253(c)(2). Under this standard, a petitioner must show that reasonable jurists could
14 debate whether the petition should have been resolved in a different manner or that the issues
15 presented were adequate to deserve encouragement to proceed further. Miller–El v. Cockrell,
16 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A certificate should
17 issue if the petitioner shows that jurists of reason would find it debatable whether the petition
18 states a valid claim of the denial of a constitutional right and that jurists of reason would find it
19 debatable whether the district court was correct in any procedural ruling. Slack v. McDaniel,
20 529 U.S. 473, 483–84 (2000). In determining this issue, a court conducts an overview of the
21 claims in the habeas petition, generally assesses their merits, and determines whether the
22 resolution was debatable among jurists of reason or wrong. Id. It is necessary for an applicant to
23 show more than an absence of frivolity or the existence of mere good faith; however, it is not
24 necessary for an applicant to show that the appeal will succeed. Miller–El v. Cockrell, 537 U.S.
25 at 338.
26 /////

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner. Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, the court should decline to issue a certificate of appealability.

Accordingly, IT IS HEREBY ORDERED that the Clerk of Court assign a district judge to this case;

IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for a writ of habeas corpus be dismissed without leave to amend; and

2. The court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 19, 2011.

UNITED STATES MAGISTRATE JUDGE

/014;lede0085.114